**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UV2, LLC, a Michigan limited liability company, as successor interest to UV2,<br><br>    Plaintiff/Judgment Creditor,<br><br>vs.<br><br>EMC TELECOM CORPORATION, an Arizona corporation, now known as EMCT ACQUISITIONS, INC.,<br><br>    Defendant/Judgment Debtor.<br><br>DIGITAL VENTURES, LLC, an Arizona limited liability company,<br><br>    Garnishee/Judgment Debtor.<br><br>DOUBLE D HOLDINGS, LLC, a California limited liability company,<br><br>    Garnishee.<br><br>PINK BIRD MEDIA, INC., a North Carolina corporation,<br><br>    Garnishee. | No. CV 10-01269-PHX-ROS<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE ROSLYN O. SILVER, CHIEF JUDGE, UNITED STATES DISTRICT COURT:

**BACKGROUND**

This matter[1] arises on Plaintiff/Judgment-Creditor UV2, LLC's ("Plaintiff") Applications for Writ of Garnishment against Garnishees Double D Holdings, LLC and Pink Bird Media, Inc. ("Garnishees"), filed on December 19 and 20, 2012, respectively (Docs. 51, 52). Garnishee/Judgment Debtor Digital Ventures, LLC ("Digital Ventures") was previously ordered to pay restitution to Plaintiff in the amount of $602,735.00, as principal, with interest accruing at the rate of 0.18% per annum from December 12, 2012. (Doc. 49.) Plaintiff seeks the Writs because of its belief that Garnishees are in possession of property in which Digital Ventures has a nonexempt interest. Both Garnishees filed Answers denying that they hold any property of Digital Ventures. (Docs. 61, 62.) On January 17, 2013, Plaintiff filed an Objection and Request for Hearing in both matters. (Docs. 65, 66.) Plaintiff objects to Garnishees' Answers, asserting that there exists good cause to believe that Garnishees do in fact have money belonging to Digital Ventures:

> [Plaintiff] and [Digital Ventures] are currently involved in litigation in the Maricopa County Superior Court (CV2009-054788), wherein the issue of [Plaintiff's], [Garnishees'] business relationships and obligations has been the subject of substantial discovery. Based upon the information elicited in the course of that litigation, including written discovery and document production, [Plaintiff] believes there is substantial evidence showing that [Garnishees] have significant financial obligations to Digital Ventures.

(Docs. 65, at 2: 66, at 2.)

This Court, pursuant to A.R.S. §12-1580, scheduled a telephonic conference between Plaintiff and Garnishees on February 7, 2013. (Docs. 77, 78.) During the telephonic conference, Plaintiff waived its right to a hearing on its Objection. Plaintiff was directed to file a Memorandum in support of its Objection by February 20, 2013, and Garnishees were directed that any responsive pleading must be filed by March 6, 2013. On February 20, 2013, Plaintiff filed a Memorandum in Support of Plaintiff's/Judgment-Creditor's Objection to Garnishees Double D Holdings' and Pink Bird's Answers. (Doc. 83.) Garnishees filed a joint Response on March 8, 2013 (Doc. 87), and on March 15, 2013, Plaintiff filed a Reply (Doc. 88). The parties then appeared for a status hearing before this Court on April 23, 2013,

---

[1] Presiding Chief Judge Roslyn Silver referred all post-judgment proceedings to this court, including requests for hearing on garnishment. (Doc. 68.)

1  and agreed at that time that an evidentiary hearing was not necessary and that the Court may
2  render its decision on the pleadings. (Docs. 89, 91.)

3  Plaintiff argues that Garnishees have money or property belonging to Digital Ventures
4  that are subject to garnishment, and that the evidence furthermore demonstrates that
5  Garnishees "actively and jointly participated in efforts to fraudulently transfer and conceal
6  assets from Digital Venture's creditors." (Doc. 83, at 2.) Plaintiff notes that Plaintiff and
7  Digital Ventures are currently involved in litigation in the State of Arizona, Maricopa County
8  Superior Court (Case No. CV2009-054788), in which the issue of Plaintiff's, Digital
9  Venture's, and Garnishees' "business relationships and obligations have been the subject of
10 substantial discovery over the past 3 years." (Id.)

11 Garnishees respond that, as identical issues are before the state court they should be
12 reserved to the state court, that Plaintiff can not establish a fraudulent transfer, and that the
13 court, in any event, lacks the authority to make a finding of a fraudulent transfer in a
14 garnishment proceeding. (Doc. 87.)

## FACTS[2]

16 The original two members of Digital Ventures were Scott DeLong and Justin
17 Huffhines, each of whom held a 50% membership interest prior to Plaintiff's involvement.
18 (Doc. 83, at 14, ¶3.) In January, 2009, Plaintiff and Digital Ventures entered into a
19 Management Services Agreement ("MSA") under which Plaintiff became a member of
20 Digital Ventures. (Id., ¶4.) Digital Ventures appointed Plaintiff, as the sole shareholder, the
21 manager of Digital Ventures, and granted him all of the power, authority, and discretion
22 allowed to a manager of a limited liability company. (Id., ¶5.) Plaintiff and Digital Ventures
23 also entered into a Negotiable Promissory Note and Line of Credit Agreement ("LOC") in
24 the amount of $60,000.00, which was personally guaranteed by DeLong and Huffhines. (Id.,
25 ¶8.) A balance accrued on the account, and Plaintiff negotiated with Digital Ventures to have
26 Digital Ventures make $300.00/day payments to pay down the balance, but that before that

---

[2]Derived from attached exhibits to Plaintiff's Memorandum.

occurred, on May 14, 2009, Digital Ventures sent Plaintiff a letter expelling Plaintiff from Digital Ventures without payment. (Doc. 83, at 15, ¶¶11-16.)

On December 18, 2008, before Plaintiff's business engagement with Digital Ventures, Plaintiff had entered into an Asset Purchase Agreement with EMC Telecom, Inc ("EMC"), under which EMC contracted to purchase Plaintiff's preexisting web hosting business, valued at approximately $675,000.00. (Doc. 83, at 15, ¶17.) In the Asset Purchase Agreement, EMC agreed to pay the total sum of $673,815.00, as well as Plaintiff's outstanding accounts receivables in the amount of $22,174.47. (Id., ¶18.) EMC later rescinded the Asset Purchase Agreement because Digital Ventures had falsely represented to EMC that Plaintiff had ownership interest in Digital Ventures prior to the sale. (Id., ¶¶19, 20.) EMC had paid $193,816.71 to Plaintiff prior to the breach. (Id., ¶18.) On August 20, 2010, Plaintiff obtained a judgment against EMC in the amount of $502,173,00, as principal, with interest accruing at the rate of 6% per annum. (Doc. 12.) On December 12, 2012, Plaintiff obtained a judgment against Digital Ventures, in a garnishee action against EMC assets, in the principal amount of $602,753.55, with interest accruing at the rate of 0.18% per annum. (Doc. 49.)

After Plaintiff had received the letter from Digital Ventures notifying him of his expulsion, on November 9, 2009, Plaintiff filed a lawsuit in the State of Arizona, Maricopa County Superior Court, case number CV2009-054788, to enforce its interest in Digital Ventures. On November 29, 2009, Plaintiff's attorney sent Digital Ventures a letter announcing that, as a member of Digital Ventures, Plaintiff requested notice of any proposed asset sales, and of Plaintiff's right to vote on any transfers before they occurred, and warned that improper transfers of assets could create fraudulent transfer liability, and requested that Digital Ventures put buyers on notice of Plaintiff's claim. (Doc. 83, at 18-20.) Digital Ventures, nonetheless, on December 9, 2009, put one of its assets, a website up for sale, and DeLong sent an email to an individual stating that Digital Ventures had interested buyers with (informal) bids coming in between 1.5 and 2 million. (Id., at 21-24.)

During this time, Digital Ventures entered into negotiations with Dennis Ashe a/k/a, the proprietor of Garnishee Pink Bird, for the purchase of the Digital Venture's website. (Doc. 83k, at 26-27.)  At one point in the negotiations, according to an undated, unsigned letter on Digital Ventures' letterhead, Pink Bird had made an offer of one million dollars. (Doc. 83, at 29.)  On March 22, 2010, DeLong, representing Digital Ventures, and Dennis Ashe of Pink Bird entered into a business agreement for the formation of Double D Holdings, LLC.  (Doc. 83, at 31-36.)  The parties agreed therein that the new entity, Double D, was formed for the main purpose of owning, managing and creating the content and production of amateurstraightguys.com website, and that any and all movies, videos, photographs, images, pictorials, DVDs, and any and all content that was produced by Digital Ventures for the amateurstraightguys.com website could be used for the new venture.  (Id., at 31.)  The parties agreed that Pink Bird would have 49.5% ownership in Double D, and Digital Ventures would have 49.5% ownership. (Id., at 32.)  Double D Holdings would then buy out any interest in Digital Venture's co-owner Huffhines in the amount of $362,500.00.  (Id., ¶4.)  Pink Bird, for the relinquishment of Huffhines' interest in Digital Ventures, agreed to pay Delong and Huffhines both the amount of $37,500.00.  (Id., ¶5.)

Subsequently, Digital Ventures announced to its affiliates that Double D Holdings had acquired all of the assets associated with the website as well of the publishing rights to all material produced as well as all of the revenue producing venues and outlets formerly used by the site, and that Double D Holdings intended to re-open the site.  (Id., at 38-41.)  Furthermore, On April 18, 2010, Delong informed Digital Ventures affiliates that "effective March 22, 2010, Digital Ventures LLC sold its interests in website Amateur Straight Guys [] which [Digital Ventures] founded and ran from 2000 until 2010," and that "the new owner of Amateur Straight Guys is Double D Holdings." (Id., at 40.)  DeLong also advised that "all debt incurred by Digital Ventures LLC remains an obligation of Digital Ventures,"and advised that Plaintiff's claim against Digital Ventures had been resolved in state court in Michigan.  (Id.)

Plaintiff asserts that an email sent by DeLong on February 18, 2010, demonstrates that the creation of Holdings was intended to facilitate a fraudulent transfer of Digital Venture's assets. In the email DeLong writes the following:

> [Pink Bird] wants to understand what the risks are in terms of any claims against our assets. I assured him that really the only inability we might encounter would be [Plaintiff] on the off chance that he would win a court case against us. ... I realize there are major creditors who will come after us if we don't pay them (EMC, MCS etc.) however as far as reaching to our assets is concerned once our major asset (ASG) is sold and since no claim on our assets has been made thus far I am certain that any assets we sold would be beyond the reach of the courts.

(Doc. 83, at 5–51.)

Garnishees do not dispute the facts asserted by Plaintiff, nor do they proffer their own, other than to provide a copy of Double D Holding's Response to Plaintiff's Motion for Summary Judgment, and Objection to Plaintiff's Statement of Facts and Controverting Statement of Facts filed in the Arizona state court action (CV2009-054788). (Doc. 87-3, 87-3.) In the pleading, Double D Holdings asserts that Plaintiff had entered into an agreement with Digital Ventures to manage Digital Ventures' financials in exchange for a 5% ownership interest in the company, and that Plaintiff's mismanagement caused the members of Digital Ventures to vote to eject Plaintiff from the company. (Id., at 3, ¶¶6-9.) Double D Holdings also asserts that at the time Pink Bird had made an offer to Digital Ventures, no other offers had been received by Digital Ventures. (Id., ¶17-18.) The business agreement that Pink Bird and Digital Ventures ultimately entered into provided only for the acquisition of the amateurstraightguys.com website and the assets developed for that site, and not for the transfer of Digital Ventures' other assets, which retained substantial value. (Id., ¶22.) Finally, Double D Holdings asserts that the acquisition of amateurstraightguys.com was an arm's length business transaction under which all parties benefitted:

> "Pink Bird] acquired an ownership stake in Double D, the owner of a website that he believed had the potential to generate income; Mr. DeLong received a modest cash payment to get him back on his feet and retained an ownership stake in the website; and Mr. Huffhines received a much more significant cash payment that would effectively operate as a monthly salary and permit him to get out the industry. There was no fraudulent intent.

(Id., ¶23.)

Garnishees state that the issue of whether or not the sale of Digital Ventures assets to Pink Bird and the creation of Double D Holdings constituted a fraudulent transfer was before the Arizona state court on a motion for summary judgment filed by Plaintiff, and that the court denied summary judgment. In support of this claim, Garnishee Double D Holdings attaches its Response to Plaintiff's Motion for Partial Summary Judgment, and the trial court's written decision. (Docs. 87-1, 87-2.) Plaintiff concedes that the state court considered the fraudulent transfer claim and decided that questions of fact precluded entry of summary judgment. (Doc. 88, at 2.)

**ARGUMENT**

Issue One. Is Plaintiff's request barred by the state court's denial of summary judgment and the district Court policy against forum shopping?

Garnishees argue that a decision by this court on the issue of fraudulent transfer is barred by the state court's denial of summary judgment on the issue. Plaintiff respond that, in Arizona, it is "well-settled that a denial of a motion for summary judgment is not considered to be a final judgment ...". Sorensen v. Farmers Ins. Co. of Arizona, 191 Ariz. 464, 465-66; 957 P.2d 1007, 1008-09 (App. 1997). Garnishees concede that the doctrine of *res judicata* does not apply as there has not been a final judgment on the merits. The Court finds that a decision by this court is not barred by the state court ruling on summary judgment.

Garnishees also argue that this Court should exercise its discretion and abstain from determining this action, in deference to the state court, and refuse Plaintiff's efforts to "forum-shop." Garnishee cites Moses H. Cone Mem'l Hospital v. Mercury Const. Corp., 460 U.S. 1 (1983) and Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976) in support of their argument. Garnishees also note that if this Court were to grant the writs of garnishment sought by Plaintiff, the state court matter would be rendered moot. The doctrine of abstention promoted by Garnishees was articulated by the United States Supreme Court in Colorado River, a case in which the Court was confronted with the problem posed by the contemporaneous exercise of concurrent jurisdiction by state and federal courts. 424

U.S. at 800-802. The Court held that the abstention from the exercise of federal jurisdiction is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Id. at 813.

The Ninth Circuit has recognized that "Colorado River abstention should only be used in exceptional circumstances." American International Underwriters v. The Continental Insurance Company, 843 F.2d 1253, 1257 (9th Cir. 1988) (internal quotation and citation omitted). The factors a court "must consider in deciding whether exceptional circumstances exist are: (1) which court first assumed jurisdiction over the property in dispute; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained." Id. (citing Colorado River, 424 U.S. at 818). The Supreme Court added two additional factors for the court to consider in Moses H. Cone Memorial Hosp, supra. They are, "'whether federal law provides the rule of decision on the merits' and whether the state court proceedings are inadequate to protect the litigant's rights." The Travelers Indemnity Company v. Madonna, 914 F.2d 1364, 1367 (9th Cir. 1990) (citing Moses H. Cone Memorial Hosp., 460 U.S. at 23, 26). Also, "the [Ninth] Circuit has held that, because the prevention of forum shopping would promote wise judicial administration, forum shopping is another appropriate factor to consider." Id., at 1367-68 (citing American Int'l Underwriters, 843 F.2d at 1259).

The court should apply these factors "in a pragmatic and flexible way, as part of a balancing process rather than as a mechanical checklist." American Int'l Underwriters, 843 F.2d at 1257 (internal quote and citation omitted). For instance, in considering the first factor, above, "it is important not only to determine whether the state or the federal complaint was filed first, but also to assess how much progress has been made in the two actions." Id. (citation omitted).

Applying the factors to the case at hand, the first factor, considering which court first assumed jurisdiction over the property in dispute, is wholly inapplicable, as money is not the sort of tangible physical property referred to in Colorado River. See, Traveler's Indemnity, 914 F.2d at 1368; American Int'l Underwriters, 843 F.2d at 1258. Applying the second

factor, the inconvenience of the federal forum, the Court finds that the federal forum in not any more inconvenient to the parties as the state court litigation, since the courts are in the same city, and sit within blocks of one another; therefore, this factor does not weigh in favor of abstention.

The third factor, the desirability of avoiding piecemeal litigation, weighs heavily in favor of abstention. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." American Int'l Underwriters, 843 F.2d at 1258. Here, the parties agree that the state and federal courts are considering the same issue, that of whether or not a fraudulent transfer, under Arizona law, occurred. The parties have also represented to the Court that extensive discovery has taken place in the state case, and that the documents presented in support of Plaintiff's Writ are documents obtained during the state discovery process. Also, Plaintiff moved for summary judgment in the state court matter, which the trial court denied, and the matter is presumably headed toward trial, at which time a jury will decide the facts and render judgment.

The forth factor, the order in which jurisdiction was obtained, weighs solidly in favor of abstention. Plaintiff filed its complaint in state court on November 9, 2009. The Writs of Garnishment were issued December 20, 2012, over 3-years later.[3] With regard to the addition factor identified by the Supreme Court, whether federal law provides the rule of decision on the merits and whether the state court proceedings are inadequate to protect the litigant's rights, the court finds that this factor also weighs in favor of abstention, as state law provides the rule of decision on the alleged fraudulent transfer, and, thus would be an adequate forum to protect the litigant's rights.

Plaintiff asserts that it is not forum shopping, but "simply trying to collect on a valid judgment that remains unpaid years after being entered." (Doc. 88, at 3.) Plaintiff cites cases that stand for the proposition that this Court is empowered to resolve these precise issues in

---

[3] The Court notes that Plaintiff sought its Writ of Garnishment against Digital Ventures on March 8, 2012, and obtained its judgment against Digital Ventures, a condition precedent to the application for writs against garnishees, on December 12, 2012. (Doc. 49.)

garnishment proceedings: Able Distributing Co., Inc. v. Lampe, 160 Ariz. 399, 773 P.2d 504 (App. 1989) (holding that garnishment proceedings afforded garnishee due process in determination of validity of underlying debt); State ex rel. Indus. Com'n of Arizona v. Wright, 202 Ariz. 255, 43 P.3d 203 (App. 2002) (upholding commissioner's ruling in garnishment proceeding that fraudulent conveyance allowed wage garnishment notwithstanding judgment debtor's objection).

The Court agrees that this Court is empowered to resolve these precise issues in garnishment proceedings, but this truism only renders Garnishees' argument more persuasive, for the reason that the abstention doctrine is only relevant if the court IS empowered to decide the issue before it in the first place. The Court finds that after consideration of the following Colorado River factors: the fact that the state court litigation was instituted long before the federal garnishment action, that substantial discovery has taken place in the state action, that the state court denied summary judgment on the fraudulent transfer issue, that the issue of fraudulent transfer is primarily one of state law, and that a jury will decide the facts in the state case as opposed to trial by submission in the federal garnishment action, abstention from exercising federal jurisdiction is proper and the matter should be stayed pending the resolution of the state case.

Having found that this matter should be stayed pending state proceedings, the Court need not address the remaining issues relating to these garnishment actions.

In accordance with the foregoing,

**IT IS HEREBY RECOMMENDED** that Plaintiff's Applications for a Writ of Garnishment (Docs. 51, 52) be stayed until the conclusion of the state court proceedings (Superior Court of Arizona, Maricopa County, UV2, LLC v. Digital Ventures LLC, et al., CV 2009-054788).

**IT IS FURTHER RECOMMENDED** that the parties be directed to file a joint status report, 30-days from the date of the Court's final Order, and then every 30-days thereafter, to report on the status of the state case.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(b) and 72. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. See Fed.R.Civ.P. 72.

DATED this 20th day of May, 2013.



Michelle H. Burns
United States Magistrate Judge